

U.S. Department of Justice

United States Attorney
Eastern District of New York

TJS

271 Cadman Plaza East
Brooklyn, New York 11201

August 31, 2015

By Hand and ECF

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Corey Lee
                  Criminal Docket No. 13-315 (KAM)

Dear Judge Matsumoto:

      The government submits this letter in advance of the sentencing in the above-captioned case, which is scheduled for September 11, 2015 at 10:00 a.m. On October 2, 2014, the defendant Corey Lee (the "defendant") pled guilty, pursuant to a plea agreement to Count One of the above-captioned indictment, which charged a conspiracy to distribute over 500 grams of cocaine; over 28 grams of cocaine base; and marijuana, in violation of 21 U.S.C. § 846. As set forth below, the government respectfully requests that the Court impose a sentence within the range of 97 to 121 months.

I.     Background

      These charges arise from Lee's participation in narcotics trafficking activities from approximately 2007 to 2012. During the course of a related investigation, the government received information that during that time period, Lee received approximately cocaine each month from a co-conspirator along with a quantity of marijuana. Lee would resell those drugs in Brooklyn and Queens, New York. (Pre-Sentence Investigation Report ("PSR") ¶ 7). This information was corroborated by wire interceptions of Lee arranging for the purchase of narcotics. (PSR ¶ 8).

      On April 25, 2013, Lee was arrested at his residence in Queens. Lee verbally consented to a search. Agents located three scales with cocaine residue, cutting agents, a grinder, and a gas mask in Lee's kitchen. They also found multiple cellular phones and $5,000 in cash. In addition, they found 8.5 pounds of marijuana in Lee's garage. (PSR ¶ 10).

The defendant was subsequently charged in an indictment with conspiracy to distribute over 5 kilograms of cocaine; over 28 grams of cocaine base; and an unspecified amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 841(b)(1)(B)(iii), 841(b)(1)(D).

Following his indictment, the defendant moved to suppress evidence seized from his residence. On March 17, 2014, the Court held an evidentiary hearing at which the case agent and Lee testified. In his testimony, Lee claimed that he had not consented to the search of his residence and did not open a safe containing $5,000 in cash for law enforcement officers. Instead, he claimed that officers began searching his apartment immediately upon arriving and were able to access the safe because it was unlocked. Lee also denied owning most of the drug paraphernalia seized from his apartment.

On September 2, 2014, the Court denied the defendant's motion to suppress in a written order. (Docket Entry 104). In that order, the Court credited the case agent's testimony of events, finding him "truthful and reliable." (Id. at 35). The Court rejected Lee's version of events, stating that he "did not appear credible during the hearing." (Id. at 36).

On October 2, 2014, the defendant pled guilty pursuant to a written plea agreement.

II.      Guidelines Calculation

The PSR sets forth a calculation of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") as follows:

| | |
|---|---|
| Base Offense Level | 34 |
| Plus: Use of a Firearm | +2 |
| Plus: Obstruction of Justice | +2 |
| Total | 38 |

The base offense level used by the Probation Department is based on the total amount of narcotics trafficked by Lee's source of supply. The government believes this calculation overstates the amount of narcotics Lee that were foreseeable to Lee. Instead, the government believes that it could prove Lee's responsibility for over 2 kilograms of cocaine. In addition, the government cannot offer evidence of Lee's knowledge of the firearms possessed by his co-conspirator and, therefore, does not seek an enhancement for use of a firearm. The government agrees with the Probation Department that Lee obstructed justice by testifying falsely.

The government's Guidelines calculation, which was also set forth in Lee's plea agreement, is as follows:

      Base Offense Level                                                                                          26

      Plus: Obstruction of Justice                                                                            +2

      Total                                                                                                                    28

      This results in an advisory range of 97 to 121 months imprisonment, given the defendant's criminal history category of III.

III.    <u>PSR Objections</u>

      The defendant has several objections to the PSR, as set forth below:

      ¶ 10: Lee objects that marijuana was the only narcotics or illicit substance found at his home. The government agrees with this correction.

      ¶ 12: Lee objects that the firearms seized in the case were found in a co-conspirators warehouse. As set forth above, the government agrees that Lee should not receive an enhancement for the use of firearms.

      ¶ 17: Lee objects to the two-point enhancement for obstruction of justice due to his false testimony. The government disagrees. Pursuant to U.S.S.G. § 3C1.1 committing perjury is conduct meriting an obstruction enhancement. U.S.S.G. § 3C1.1, Application Note 4(B). Lee claims that he did not perjure himself, but rather that "the Court chose to find the agents' testimony credible." This is incorrect. In this case, Lee testified in a manner that was directly contrary to the testimony of the case agent. It is not possible for both the case agent and Lee to have been truthful. In finding that the case agent was credible, the Court implicitly found that Lee had lied during the course of his testimony. Indeed, the Court specifically noted that Lee had even changed his story from that of his sworn affidavit. (Court Order, Docket Entry 104 at 36). Given its finding that Lee had not told the truth during his testimony, Lee should receive an enhancement for obstruction.

      ¶ 18: Lee asks to be given credit for acceptance of responsibility. As noted in the Application Notes of U.S.S.G. § 3E1.1, "conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." As a result, Lee should not receive an adjustment for acceptance of responsibility.[1]

---

[1] Lee also indicates that the government contemplated an "acceptance of responsibility" adjustment in the plea agreement. This is incorrect. The plea agreement does not calculate that Lee would receive such an adjustment due to his obstructive conduct.

¶ 38-39: Lee asks that his criminal history category should be reduced as the two offenses are related to the same conduct. The government has no objection to this change. This change would reduce Lee's criminal history points from 6 to 5. However, he would remain in Criminal History Category III, which applies to defendants with between 4 and 6 criminal history points.

III.    Legal Standard

In the Supreme Court's opinion in United States v. Booker, 543 U.S. 220, 222 (2005), which held that the Guidelines are advisory not mandatory, the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentence, but also may tailor the sentence in light of other statutory concerns. See 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

In Gall v. United States, 522 U.S. 38 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall 522 U.S. at 49 (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors[2] to determine whether they support the sentence requested by a party. In doing so, [the court] may not presume that the Guidelines range is reasonable. [The court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

IV.    A Sentence Within the Advisory Guidelines Range is Appropriate

Pursuant to 18 U.S.C. § 3553(a), the government respectfully requests that the Court impose a sentence within the advisory guidelines range of 97 to 121 months' imprisonment. Three Section 3553(a) factors are particularly relevant in this case: (1) the need for the sentence imposed to reflect the seriousness of the offense; (2) the nature and circumstances of the offense; and (3) affording adequate deterrence.

First, a sentence within the advisory guidelines range would reflect the seriousness of the defendant's offense. The defendant was not involved briefly or

---

[2] Title 18, United States Code, Section 3553(a) requires a court to consider a number of factors in imposing a sentencing, including (among others) the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1)); the need for the sentence to reflect the seriousness of the violation, to promote respect for the law, and to provide a just punishment for the violation (§ 3553(a)(2)(A)); and the need for the sentence to afford adequate deterrence to criminal conduct (§ 3553(a)(2)(B)), and to protect the public from further crimes or violations of the defendant (§ 3553(a)(2)(C)).

4

haphazardly in this conspiracy.  Rather, over the course of five years he regularly received cocaine and marijuana to distribute on the streets of New York.  This did not mark an aberration in his life.  This was his regular occupation.

Second, in considering the "nature and circumstances of the offense," see 18 U.S.C. § 3553(a)(1), the Court should consider that, while the defendant references his six-year-old son as a reason for sympathy, the defendant also brought narcotics into the very house that his son lived.  He had scales, a grinder, cutting agents, and a gas mask in the kitchen of the apartment that he shared with his wife and son.

Finally, the Court should consider the need for deterrence, not just for this defendant, but for others who may choose to make easy money selling illegal drugs.  A sentence within the advisory guidelines range would serve to discourage those potential drug dealers from this defendant's course.

V.      Conclusion

For the foregoing reasons, the government respectfully requests a sentence of 97 to 121 months' custody.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:   /s/Tyler J. Smith
Tyler J. Smith
Assistant U.S. Attorney
(718) 254-6186

cc:   Aaron Goldsmith, Esq. (by email and ECF)
Probation Officer Jeremy Neiss (by email)

5